# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| THE UPPER CRUST, LLC, | ) | Case No. 12-18134-HJB |
| | ) | |
| Debtor | ) | |

### MEMORANDUM OF DECISION

Before the Court is a "Motion of Cara Donna Provision Co., Inc. for Orders Allowing Requests for Payment Relative to Rent Due and Rejection Damages Associated with the Upper Crust 'Commissary' Sublease" (the "Payment Motion"). Cara Donna Provision Co., Inc. ("CDP") requests immediate payment or administrative priority status for (i) postpetition rents claimed to be due to CDP as lessor under its commercial lease (the "CDP Lease") with JJB Hanson Management, Inc., one of the debtors in this substantively consolidated bankruptcy case (collectively, the "Debtor"),[1] and (ii) rejection damages pursuant to § 503(b)(7).[2] Resolution of the Payment Motion requires a determination of whether the CDP Lease was assumed by the Chapter 11

---

[1] The Debtors are The Upper Crust, LLC, The Upper Crust - Back Bay, LLC (Case No. 12-18135), The Upper Crust - Fenway, LLC (Case No. 12-18136), The Upper Crust - Harvard Square, LLC (Case No. 12-18137), The Upper Crust - Hingham, LLC (Case No. 12-18138), The Upper Crust - Lexington, LLC (Case No. 12- 18139), The Upper Crust - State Street, LLC (Case No. 12-18140), The Upper Crust – South End, LLC (Case No. 12-18142), The Upper Crust - Pennsylvania Avenue, LLC (Case No. 12-18143),The Upper Crust - DC, LLC (Case No. 12-18148), The Upper Crust - Waltham, LLC (Case No.12-18144), The Upper Crust - Watertown, LLC (Case No. 12-18145), The Upper Crust -Wellesley, LLC (Case No. 12-18146), and JJB Hanson Management, Inc. (Case No. 12-18147).

[2] See 11 U.S.C. § 101 et seq. All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

1

(now Chapter 7) trustee (the "Trustee") and, if not, the date on which the CDP Lease was or should be deemed rejected.

I. <u>FACTS AND TRAVEL OF THE CASE</u>

The facts relevant to this contest are undisputed; not so the consequences which flow from them.

On October 4, 2012, The Upper Crust, LLC and several related entities filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. The cases have since been substantively consolidated. On November 7, 2012, the Court ordered the appointment of a Chapter 11 trustee (the "Trustee"). And on March 6, 2013, the case was converted to one under Chapter 7.[3]

Prepetition, the Debtor operated a chain of pizza restaurants in the Boston and Washington, D.C. areas, and as of the petition date, the Debtor held leasehold interests in eleven unexpired leases of non-residential real property where the restaurants were located. Among those leasehold interests was a sublease executed on December 23, 2010 between the Debtor and CDP for real property located at 55 Food Mart Road in Boston, Massachusetts (the "Premises"). The CDP Lease provided for an initial term ending on December 31, 2015 and monthly rent payments of $5,918.52 for the period of December 1, 2012 through November 30, 2013.

On November 28, 2012, the Trustee filed a motion seeking, among other relief, the authority to assume, assign, and sell by public auction the Debtor's non-residential leases and pre-approval of certain bidding procedures (the "Sale Motion"). On December 5, 2012, this Court entered its "Order (I) Authorizing and Approving Bid

---

[3] The Chapter 11 trustee was also appointed as the Chapter 7 trustee.

2

Procedures to Be Employed in Connection with Public Auction; (II) Scheduling an Auction and Hearing to Consider Approval of the Public Auction; And (III) Approving Form and Manner of Notice of Public Auction" (the "Bid Procedures Order"). See ECF No. 196.

At a public auction conducted on December 19, 2012 (the "Auction Sale"), the Trustee procured agreements to purchase each of the Debtor's leases, with the exception of the CDP Lease. On December 21, 2012, the Trustee filed a Notice of Intent to Abandon Property, reflecting his intention to abandon the estate's interest in the equipment and other personal property remaining at the Premises (the "Notice of Abandonment"). On December 21, CDP's counsel sent an email to the Trustee acknowledging his receipt of the Trustee's Notice of Abandonment and further inquiring as to the "status of the rejection" of the Lease in light of the fact that no bids for the CDP Lease were elicited at the Auction Sale. T'ee Obj. to Payment Mot. Ex. A p. 3, June 27, 2013, ECF No. 386. On December 24, in an email sent to counsel to CDP, the Trustee stated that CDP should "consider the lease terminated as of December 31[, 2012]," and advised CDP to contact the bank holding a security interest in the remaining personal property with regard to the property left on the Premises.[4] Id. at 2.[5] On December 28, 2012, following a final hearing on the Sale Motion (the "Sale Hearing"), the Court entered separate orders approving the assumption, assignment, and sale of each of the other 10 leases that were sold at auction (the "Sale Orders"). According to the Trustee,

---

[4] According to CDP, the secured lender did not remove the property left at the Premises until later in February 2013. CDP Reply to T'ee Obj. 11 ¶ 14, July 8, 2013, ECF No. 388.

[5] In a later email exchange between the Trustee and CDP's counsel addressing the Debtor's security deposit, CDP's counsel clarifies that his statements in that email "contemplate that the [CDP Lease] was deemed rejected as of January 1st." T'ee Obj. Ex. B p.2.

3

the keys to the Premises were returned to CDP no later than December 31, 2012. See T'ee Obj. 9 ¶ 34.

Almost five months later, on May 17, 2013, CDP filed its Payment Motion. Through that motion, CDP seeks: (a) the Trustee's immediate payment or administrative expense priority for the December 2012 and January 2013 rents, totaling $11,837.04; (b) administrative expense priority status for the February 2013 and March 2013 rents totaling $11,837.04; and (c) administrative expense priority status for its rejection damages in the amount of $130,750.96.

The Trustee filed an objection to the Payment Motion (the "Objection"), conceding that CDP is entitled to payment of $5,918.52 on account of the December 2012 rent, but disputing CDP's entitlement to either immediate payment or administrative priority status for the rents due for January through March 2013. The Trustee further requested (for the first time) that the Court either approve the rejection of the CDP Lease retroactively effective on December 31, 2012 or deem the CDP Lease rejected as a matter of law as of February 1, 2013. After a hearing on the Payment Motion and a determination that the facts were not materially in dispute, the Court took the matter under advisement.

II.    POSITIONS OF THE PARTIES

The CDP argues that the Trustee should immediately pay the rent due for January 2013 for the same reason that the Trustee concedes his obligation to render payment of the December 2012 rent – namely, that absent a formal rejection of the CDP Lease prior to January 2013, § 365(d)(3) requires the Trustee to "timely perform all

4

obligations . . . arising from and after the order for relief under any unexpired lease of non-residential property, until the lease is assumed or rejected."  According to CDP, the CDP Lease was not effectively rejected by the Trustee's informal communications with counsel in December 2012 or by the Trustee's surrender of the keys to Premises. Rather, CDP argues, rejection of the CDP Lease could occur only by an order of this Court approving the Trustee's proposed rejection.

Relying on Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.), 67 F.3d 1021, 1029 (1st Cir. 1995), the Trustee counters that this Court should approve the rejection of the CDP Lease retroactively effective as of December 31, 2012 because CDP had, by that date, received clear and unequivocal notice of his intention to reject the CDP Lease.  The Trustee maintains that his intention to reject the lease was made obvious by his communications with CDP counsel, the return of the keys (and thus possession of the Premises) to CDP on December 31, and the December 21 Notice of Abandonment of the personal property remaining at the Premises. Thus, the Trustee argues, with this Court's retroactive approval of the Trustee's rejection of the CDP Lease, CDP would not be entitled to immediate payment or administrative expense status for rent due in January 2013 or thereafter.

But CDP raises an additional argument regarding the estate's liability not only for the January 2013 rent, but also for the February and March rents and damages arising from rejection of the CDP lease.  CDP maintains that the CDP lease was actually *assumed* by the estate, an assumption effectuated by the Court's December 5, 2012 Bid Procedures Order.  According to CDP, the Court must have approved the assumption of the CDP lease when it entered the Bid Procedures Order; otherwise, the

5

Trustee would have had no authority to "sell" (assign) the lease at the Auction Sale. Because the CDP Lease was assumed by the estate, CDP argues, the estate is obligated to pay not only the post-assumption rent in the total amount of $11,837.04, but CDP's administrative expense for the rent due under the lease for two years after the date of rejection[6] – a total of $130,750.96– by operation of § 503(b)(7).[7]

In response, the Trustee maintains that the CDP Lease was never assumed and was rejected, at the latest, as of February 1, 2013 – 120 days after the petition date – by operation of § 365(d)(4)(A)(i).[8] Accordingly, the Trustee argues that should the Court deny retroactive rejection of the CDP Lease, the estate is obligated, at most, for an additional $5,918.52 (representing the rent owed for January). In support of his position, the Trustee insists that he did not request court approval of an assumption of the CDP Lease and that, absent court approval, there could be no assumption. In response to CDP's argument that the Bid Procedures Order necessarily approved an

---

[6] CDP says that the CDP Lease was rejected effective on March 6, 2013, the date the case was converted to one under Chapter 7.

[7] Section 503(b)(7) provides administrative expense priority "with respect to a non-residential real property lease assumed under section 365, and subsequently rejected, a sum equal to all monetary obligations due . . . for the period of two years following the later of the rejection date or the date of the actual turnover of the premises." 11 U.S.C. § 503(b)(7).

[8] Section 365(d)(4)(A) provides:

> . . . an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
>
> (i)   the date that is 120 days after the date of the order for relief; or
>
> (ii)  the date of the entry of an order confirming a plan.

11 U.S.C. § 365(d)(4)(A).

6

assumption of the CDP Lease, the Trustee argues that the Bid Procedures Order did nothing more than grant the Trustee the authority to *attempt* to assume and assign the leases, and that assumption and assignment of the Debtor's leases remained subject to later approval by the Court at the Sale Hearing. And that approval *was* ultimately granted in the Sale Orders, but not with regard to the CDP Lease.

III.   DISCUSSION

    A.   **Was the CDP Lease Assumed?**

Section 365(a) allows a trustee (or debtor-in-possession), *subject to the court's approval*, to assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a) (emphasis supplied). While the determination of whether a particular lease should be assumed or rejected is a business decision largely within the trustee's discretion, "only the court can approve [a] proposed assumption." Gray v. Western Env. Servs. & Testing, Inc. (In re Dehon, Inc.), 352 B.R. 546, 560 (Bankr. D. Mass. 2006). "*It is well established that the doctrine of "implied assumption" has little, if any, merit.*" Id. (emphasis supplied).

CDP's argument that the Bid Procedures Order effected an approval of the assumption of the CDP Lease is fundamentally flawed. Not only was there no specific request in the Sale Motion for court approval of lease assumptions prior to the final sale hearing, but nothing in the Bid Procedures Order could possibly be construed as an approval of an assumption of the CDP Lease or any other of the leases.

CDP misses the mark in its attempt to distinguish the present case from Dehon by noting that, here, the CDP Lease was specifically identified in the Sale Motion (in

7

Dehon, the contracts at issue were not specifically identified). The Bid Procedures Order did not approve the assumption or assignment of *any* of the Debtor's leases. Rather, it merely granted the Trustee the authority to solicit bids for the Debtor's assets by way of public auction. Although the CDP Lease was identified as among those assets the Trustee *wished* to sell, the order makes clear that Court approval of any lease assumption and assignment would not be considered until the Sale Hearing:

> The Sale Hearing shall be held before the undersigned United States Bankruptcy Judge . . . at which time the Court shall (i) consider *approval of the Auction of the Assets* to the Successful Bidder(s) and Second Highest Bidder(s) as determined by the Trustee; (ii) consider the *proposed assumption and assignment of executory contracts and unexpired leases* and related cure claims . . .

Bid Procedures Order 3 ¶ 6, Dec. 5, 2012, ECF No. 196.

While the Trustee's Sale Motion did indeed request the Court's authorization of the assumption and assignment of the Debtor's leases in connection with the sale, only the Sale Orders constituted Court approval of the assumption and assignment of particular leases – and the CDP Lease was not among them. Accordingly, the Court finds and rules that the CDP Lease was not assumed, and CDP is therefore not entitled to immediate payment of or administrative expense status for any rent on that basis, nor is it entitled to rejection damages pursuant to § 503(b)(7).

### B.    When was the CDP Lease Rejected?

Pursuant to § 365(d)(4)(A)(i), a lease of nonresidential real property is deemed rejected, and the trustee must immediately surrender the property to the lessor, after the expiration of the 120-day period following the filing of a Chapter 11 case (unless a plan has been confirmed prior to that date or the court grants an extension of the deadline).

8

11 U.S.C. § 365(d)(4).  Here, while the Trustee may have surrendered the leasehold to CDP prior to the 120-day deadline (February 1, 2013), the Trustee did not seek, and the Court did not grant, formal approval of the Trustee's purported rejection of the CDP Lease.  Accordingly, the Trustee was obligated to "perform all of the obligations of the debtor" (including the payment of rent) with respect to the CDP Lease through January. 11 U.S.C. § 365(d)(3). In an effort to avoid the estate's obligation to pay the January rent, however, the Trustee has sought approval of the rejection of the CDP Lease retroactively effective to December 31, 2012 when the estate vacated the property and shortly after his email communication to CDP's counsel to the effect that CDP should consider its lease with the Debtor terminated.

In Thinking Machines Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines), 67 F.3d 1021, 1028 (1st Cir. 1995, the First Circuit Court of Appeals held "that a rejection of a nonresidential lease under section 365(a) becomes legally effective only after judicial approval has been obtained" and that "court approval [is] a condition precedent to the effectiveness of a trustee's rejection of a nonresidential lease." Id. at 1025.  But the Thinking Machines court also suggested that equitable considerations might, in some cases, allow the bankruptcy court to "abandon mechanical solutions in favor of the pliant reins of fairness," id. at 1028, and approve a rejection retroactively. Which circumstances might, in such cases, tip the "balance of equities . . . in favor of such remediation," id., were not described.  Id. at 1029 n. 9 ("Because no two cases are exactly alike, we eschew any attempt to spell out the range of circumstances that might justify the use of a bankruptcy court's equitable powers in this fashion. That exercise is best handled on a case-by-case basis.").  But in discussing the possibility of the

9

retroactive effectiveness of an order approving rejection of an executory contract, the Thinking Machines court never suggested that retroactivity could be applied to a period of time prior to the filing date of a motion to reject that contract. See id. at 1028 ("nothing in our holding today precludes a bankruptcy court, in an appropriate section 365(a) case, from approving a trustee's rejection of a nonresidential lease retroactive *to the motion filing date*) (emphasis supplied). And in support for its holding that court approval of rejection is a condition precedent to its effectiveness, the Thinking Machines court noted that Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 6006 and 9014, "read together, . . . require a trustee who desires to reject a lease to file a formal motion to that effect." Id. at 1026.

In In re GCP CT School Acquisition, LLC, 429 B.R. 817, 826 (B.A.P. 1st Cir. 2010), the United States Bankruptcy Appellate Panel of the First Circuit (the "BAP") reiterated that rejection of an executor contract could be retroactive only if the estate representative had provided formal notice of that intention. And while the BAP held that the required filing need not necessarily be titled a "motion to reject," it also held that the rejection in that case could not be retroactively effective to a date preceding the trustee's filing of the pleading which made the intention to reject clear and that emails and other out-of-court communications could not constitute sufficiently adequate notice. GCP CT, 429 B.R at 826, 832. Here, in arguing that the rejection of the CDP Lease should be effective retroactively to December 31, 2012, the Trustee relies on just the sort of informal notice disapproved by the BAP in GCP CT.

Approving retroactive rejection of the CDP Lease based on out-of-court communications between the Trustee and CDP would not only be contrary to the First

10

Circuit's clear holding in Thinking Machines that rejection under § 365 "requires express approval by the court," but "would trivialize judicial oversight of the rejection process." Thinking Machines, 67 F.3d at 1026.[9]  Accordingly, the Court declines to approve the

---

[9] A survey of cases from other jurisdictions likewise reveals that, while many bankruptcy courts have ruled that they had the authority to authorize retroactive rejection of an executory contract, the effective date of rejection has seldom been one prior to the date a motion to reject (or similar request) was filed with the court.  See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos, 482 F.3d 602 (2d Cir. 2007) (rejection effective retroactive to date after motion was filed, but prior to entry of order approving the rejection); Pacific Shores Dev., LLC v. At Home Corp. (In re At Home Corp.), 392 F.3d 1064, 1066, 1075 (9th Cir. 2004) (rejection effective retroactive to petition date where motion to reject filed with bankruptcy case and premises were vacated prior to filing of the bankruptcy case); In re Philadelphia Newspapers, LLC, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010) (rejection effective retroactive to date motion to reject was filed); Colony Beach & Tennis Club, Inc. v. Colony Beach & Tennis Club Assoc., Inc. (In re Colony Beach & Tennis Club Assoc., Inc.), No. 8:09-cv-535-T-33, Bankr. No. 8:08-bk-16972-KRM, 2010 WL 746708, *5 (M.D. Fla. March 2, 2010); In re Cafeteria Operators, L.P., 299 B.R. 384, 394 (Bank. N.D. Tex. 2003) (rejection retroactive to date motion was filed); In re CCI Wireless, LLC, 279 B.R. 590, 595 (Bankr. D. Colo. 2002) (rejection effective retroactive to date motion was filed), aff'd 297 B.R. 133, 140 (D. Colo. 2003); BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.), No. 02 Civ. 6419(NRB), 2002 WL 31548723, *6 (rejection effective on date prior to entry of order approving rejection, but post-dating filing of the motion to reject); In re Amber's Stores, Inc., 193 B.R. 819, 820-21, 827 (Bankr. N.D. Tex. 1996) (rejection effective retroactive to petition date where debtor filed motion to reject on petition date, sought emergency determination, and had vacated the premises prepetition); Constant Ltd. Partnership v. Jamesway Corp. (In re Jamesway Corp.), 179 B.R. 33, 39 (S.D.N.Y. 1995) (rejection effective prior to date order approving rejection entered, but to a date subsequent to the filing of motion to reject).

And those cases where retroactive rejection was set at a date earlier than the date the motion seeking approval was filed are either in the distinct minority or contain easily distinguishable fact patterns from the circumstances present in this case.  See, e.g., In re New Meatco Provisions, LLC, No. 2:13-bk-22155-PC, 2013 WL 3760129, *1, 6 (Bankr. C.D. Cal. July 16, 2013) (rejection of lease effective retroactive to date debtor turned possession of premises over to landlord where motion to reject was filed approximately 2 weeks of the bankruptcy case filing, landlord had state court judgment for possession of the property, and debtor had surrendered possession of the premises shortly before filing the motion to reject); In re Manis Lumber Co., 430 B.R. 269, 271-72, 280 (where debtor filed motion to reject 6 days after debtor vacated leased premises and 2 days after court approved sale of substantially all of the debtor's assets, rejection of lease would be effective retroactive to date debtor vacated premises, as landlord had unequivocal notice of estate's intent to reject, had possession of the premises, and could commence the re-letting process); In re O'Neil Theatres, Inc., 257 B.R. 806 (Bankr. E.D. La. 2000) (rejection of lease effective retroactive to petition date where motion to reject filed three days after bankruptcy case filed and landlord had control over and had padlocked the premises prior to the petition date).

11

rejection of the CDP Lease retroactive to December 31, 2012. Rather, the Court finds and rules that the CDP Lease was rejected as of February 1, 2013, pursuant to §365(d)(4)(A)(i), and the estate is therefore liable for payment of the December and January rents in accordance with § 365(d)(3).

IV.     CONCLUSION

For all the foregoing reasons, the Court finds and rules that the CDP Lease was not assumed by the Trustee and was rejected effective as of February 1, 2013 pursuant to § 365(d)(4)(A)(i). Accordingly, the Trustee will be ordered to immediately pay to CDP a total of $11,837.04 – the amount representing the rents due under the CDP Lease for December 2012 and January 2013, subject to the possibility of disgorgement by CDP in the event of future administrative insolvency. See In re PYXSYS Corp., 288 B.R. 309, 316 (Bankr. D. Mass. 2003). CDP's request for payment or administrative expense priority status for the claimed February and March 2013 rents and rejection damages will be DENIED. An order in conformity with this memorandum shall issue forthwith.

DATED: November 22, 2013          By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge